IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Byron J. Clemons, | Case No: 2:23-cv-283-BHH-MHC |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Martin Marietta Materials, Inc. d/b/a Martin Marietta Aggregates, | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

## JURISDICTION AND VENUE

1. Plaintiff is a citizen and resident of the State of South Carolina, County of Berkeley and a former employee of Defendant.

2. Defendant is a for-profit corporation doing business and in the State of South Carolina, County of Berkeley.

3. At all times pertinent to this Complaint, Defendant conducted business in Cross, South Carolina.

4. Defendant employs more than fifteen employees and is engaged in an industry affecting commerce. At all times material herein, Defendant was an "employer" within the meaning of 42 U.S.C. §2000e.

5. Plaintiff was an employee of Defendant from 2013 to March 31, 2021.

6. At the time he was terminated from employment, Plaintiff was working in Defendant's Berkeley Quarry, near Cross, South Carolina.

1

7. All actions pertinent to the allegations in this Complaint took place in the Charleston Division of the South Carolina District. Presently and at all times, Defendant has conducted substantial, continuous and systematic commercial activities in this District.

8. This action arises under the Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1988 (b).

9. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1391(b) and (c).

10. Plaintiff has exhausted all of his requisite administrative remedies and has filed this Complaint within ninety (90) days of his receipt of a Notice of Right to Sue from the Equal Employment Opportunity Commission, received on October 28, 2022. (Exhibit A.)

**FACTS**

11. Defendant is a worldwide supplier of aggregates and heavy building materials.

12. Plaintiff most recently worked for Defendant as a Foreman.

13. Plaintiff was a respectful, reliable, hardworking employee.

14. Plaintiff applied for a promotion to Foreman in 2019 and was told by his supervisor, Lin Kramer, that the promotion was "out of his league."

15. Despite Mr. Kramer's objections and discouragement, Plaintiff applied for the promotion and was awarded the promotion.

16. After Plaintiff was awarded the promotion, Mr. Kramer changed the job to include additional job requirements to try to frustrate Plaintiff and encourage him to quit.

17. Mr. Kramer explained to Plaintiff that the job was "out of his league" because when he thought about the job, he imagined specific employees performing the job and thought employees "like" these employees would perform this type of job and be well suited for this type

of job. Mr. Kramer named three specific employees, all of whom were Caucasian-American men and one of whom only had a high school degree in comparison to Plaintiff's three degrees.

18. Mr. Kramer disparaged Plaintiff's education because he attended an HBCU (Historically Black College and University), which Mr. Kramer didn't view as a valid university.

19. After hearing Mr. Kramer's discriminatory comments and witnessing Mr. Kramer discipline African-American employees harsher than Caucasian-American employees, Plaintiff, who is African-American, objected to Mr. Kramer's actions and comments and told Mr. Kramer he was "always targeting people who look like me."

20. Plaintiff communicated in a respectful manner and attempted to help educate Mr. Kramer about the necessity of treating employees of different races equally but Mr. Kramer ignored Plaintiff's concerns.

21. Plaintiff objected to Mr. Kramer's actions and comments and attempted to elevate his complaint of discriminatory treatment to the corporate office and was told to try to "hold out," presumably until Mr. Kramer retired.

22. Plaintiff also contacted Human Resources to report the discriminatory treatment and was told he could meet with a Human Resources representative later that year when the representative was already scheduled to visit the Berkeley Quarry.

23. Ultimately, Defendant terminated Plaintiff's employment before the Human Resources representative visited the Berkeley Quarry.

24. Plaintiff was well-liked by Defendant's other supervisors and viewed as a high performing employee with a bright future, but he was disliked and unfairly branded as a trouble-maker by Mr. Kramer.

25. Plaintiff successfully performed his job duties as a Foreman while employed by Defendant.

26. Mr. Kramer's animus towards Plaintiff arose from Plaintiff's African-American race and his good faith complaint of racial discrimination and objection to Mr. Kramer's discriminatory actions and comments.

27. One of Defendant's employees communicated to Plaintiff that Mr. Kramer was trying to get Plaintiff fired.

28. While working as a Forman, Plaintiff performed the work of an Assistant Plant Manager but Mr. Kramer refused to promote him to this position and required him to perform the additional work without the title or compensation that was given to other Assistant Plant Managers.

29. On or around March 29, 2021, Mr. Kramer set a trap for Plaintiff by refusing to grant his request for an electrician or a key to an electrical box and leaving him with no choice but to follow directives in the safest way possible or risk being terminated for being directly insubordinate. In a similar situation with another employee, Mr. Kramer allowed an employee to access an electrical box and then pretended not to witness the action and stated "I don't see you in there and I'm turning my head."

30. Mr. Kramer reported Plaintiff's actions to Defendant's corporate office but turned a blind eye to similar actions of employees who were not in Plaintiff's protected class.

31. On March 31, 2021, Defendant terminated Plaintiff's employment allegedly because of a lock out/tag out violation related to the occurrence on March 29, 2021, but at the time he was terminated, Plaintiff had never received any verbal or written warnings and his performance was equal to or better than Caucasian-American employees who were not terminated.

32. Other employees (who are not in Plaintiff's protected class) were not reported to Defendant's corporate office by Mr. Kramer and not terminated from employment for safety violations, including failing to use a required safety harness, engaging in major electrical mistakes, and failing to report damage to company property which occurred because of willful violations of equipment protocols.

33. Defendant's actions were taken because of Plaintiff's race and in retaliation for Plaintiff's complaint of race discrimination.

34. Such unlawful actions, omissions, and decisions on the part of Defendant were done in a knowing, willful, wanton, malicious, reckless and bad faith manner, and violated Plaintiff's clearly established legal rights and privileges of which a reasonable person would have been aware.

35. After terminating Plaintiff's employment, Defendant hired a Caucasian-American employee to perform some of Plaintiff's job duties and began recruiting and seeking applicants for the Assistant Plant Manager Position.

36. Plaintiff intended to work for Defendant until retirement and was viewed as a role model in the African-American community of Cross because he had worked hard to obtain multiple degrees and the type of job that had previously often only been acquired by Caucasian-American employees.

37. After being terminated, Plaintiff suffered damages.

38. Plaintiff's damages include the loss of his salary and bonus, the loss of health insurance and benefits, and the decreased long-term value of his pension plan.

39. Additionally, Plaintiff suffered from anxiety, loss of enjoyment of life, and inability to sleep after being discriminated against, retaliated against, and terminated by Defendant.

40.	As a result of Defendant's actions, Plaintiff suffered damages in the form of lost back and future wages and benefits, emotional distress, humiliation and embarrassment, inconvenience, loss of enjoyment of life, physical injuries, reputational damages, lost future job opportunities, compensatory damages, punitive damages, attorney's fees, and costs.

**FIRST CAUSE OF ACTION**
**(Race Discrimination in Violation of Title VII)**

41.	Plaintiff incorporates all prior allegations, where not inconsistent, as if fully set forth herein.

42.	Plaintiff is a member of a protected class (African-American).

43.	Plaintiff's immediate supervisor (Lin Kramer) was a Caucasian-American.

44.	Defendant subjected Plaintiff to discrimination because of his race.

45.	Defendant terminated Plaintiff's employment because of his race.

46.	At the time Plaintiff was terminated from his employment, Plaintiff was performing his job in a matter which met Defendant's expectations and which was equal to or better than the performance of similarly situated employees outside his protected class.

47.	Defendant terminated Plaintiff's employment and allowed the similarly situated employees outside Plaintiff's protected class to retain their jobs.

48.	Plaintiff was qualified for the position he held with Defendant and was often praised for his commendable performance.

49.	Upon information and belief, Plaintiff was replaced by an employee outside his protected class with fewer qualifications than Plaintiff.

50.	Defendant stated a false and pretextual reason for Plaintiff's termination.

51.	The circumstances surrounding Plaintiff's termination infer the real reason for his termination was his race.

52. Plaintiff was discriminated against because of his race, in violation of Title VII, and is entitled to damages.

53. But for Plaintiff's race, Defendant would have properly investigated Plaintiff's complaints of race discrimination, would not have allowed the discrimination and retaliation to continue, and would not have terminated Plaintiff's employment.

54. But for Plaintiff's race, Defendant would not have discriminated against Plaintiff.

55. The discriminatory actions, omissions and decisions by Defendant against Plaintiff were designed to cause, have caused, and will continue to cause Plaintiff to lose wages, benefits, compensation, entitlements and other rights. In addition, Plaintiff has suffered humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences for which he seeks full damages and make whole relief.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

56. Plaintiff incorporates the allegations set forth above as if fully restated herein.

57. Plaintiff engaged in good faith protected activity by complaining about, opposing, and reporting race discrimination.

58. After Plaintiff engaged in protected activity, Defendant gave Plaintiff additional job duties and created a difficult working environment for Plaintiff in order to try to force Plaintiff to resign from employment.

59. When Plaintiff refused to resign, Defendant terminated Plaintiff's employment in retaliation for Plaintiff engaging in protected activity.

60. Similarly situated employees who had not engaged in protected activity were not terminated by Defendant.

61. Defendant knowingly permitted its employees to retaliate against Plaintiff after Plaintiff reported and objected to racial discrimination.

62. Defendant took materially adverse employment actions against Plaintiff within a short time after Plaintiff engaged in protected activities.

63. Plaintiff had never been given write-ups or put on a performance improvement plan by Defendant before Plaintiff engaged in protected activities.

64. A causal connection exists between Plaintiff's protected activity and Defendant's materially adverse employment actions.

65. Defendant's stated reasons for its actions are false and pretextual.

66. Such unlawful actions, omissions and decisions on the part of Defendant have been done in a knowing, willful, wanton, malicious, reckless and bad faith manner, and violate Plaintiff's clearly established legal rights and privileges of which a reasonable person would have been aware.

67. The retaliatory actions by Defendant against Plaintiff were designed to cause, have caused, and will continue to cause Plaintiff to lose wages, benefits, compensation, entitlements and other rights. In addition, Plaintiff has suffered humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences for which he seeks full damages and make whole relief.

68. Plaintiff is entitled to actual and compensatory damages, back and front pay and benefits, punitive damages, costs, post judgment interest as allowed by law, and attorney fees for Defendant's discrimination and retaliation against him in violation of Title VII.

Wherefore, having fully stated his Complaint against Defendant, Plaintiff prays for all available relief, including an award of lost wages, benefits, and other earnings, front pay, damages

for emotional distress, humiliation, and embarrassment, as well as other actual, consequential, compensatory, and punitive damages resulting from Defendant's conduct complained of herein, and all other legal and equitable relief as the Court deems appropriate, including but not limited to the costs of this action, attorneys' fees, and pre-judgment and post-judgement interest.

BLOODGOOD & SANDERS, LLC

s/Lucy C. Sanders
Lucy C. Sanders, Federal Bar No.: 10834
242 Mathis Ferry Road, Suite 201
Mt. Pleasant, SC 29464
Telephone: (843) 972-0313
Email: lsanders@bloodgoodsanders.com
*Attorneys for Plaintiff*

Charleston, South Carolina

Date:  January 20, 2023