IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Byron J. Clemons, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:23-cv-00283-BHH |
| v. ) | |
| ) | **ORDER** |
| Martin Marietta Materials, Inc. d/b/a ) | |
| Martin Marietta Aggregates, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Byron J. Clemons ("Plaintiff") filed this employment discrimination action against his former employer, Defendant Martin Marietta Materials, Inc. ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (ECF No. 1.) Pursuant to the provisions of Title 28, U.S.C. § 636(b)(1)(B), and the Local Rules, D.S.C., this matter was referred to a United States Magistrate Judge for consideration.

Now before the Court is Defendant's motion for summary judgment. (ECF No. 28.) Plaintiff filed a response in opposition, (ECF No. 30), and Defendant filed a reply. (ECF No. 31.)

On January 15, 2015, United States Magistrate Molly H. Cherry issued a Report and Recommendation ("Report"), recommending that Defendant's motion for summary judgment be granted. (ECF No. 33.)

On January 29, 2025, Plaintiff filed objections to the Report, (ECF No. 34), and on February 12, 2025, Defendant filed a response to Plaintiff's objections. (ECF No. 36.) Accordingly, this matter is now ripe for review.

**Standard of Review**

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir.1983).

**Discussion**

The Report sets forth, in detail, the relevant facts and legal standard, and because no party objects to these portions of the Report, the Court incorporates those facts and legal standard without a recitation.

Plaintiff asserts two objections to the Report. Plaintiff argues that the Magistrate Judge (1) failed to consider that Lin Kramer's directive to Plaintiff was the proximate cause of his termination and was motivated by racial bias, and (2) failed to properly consider Kramer's influence on the investigation into Plaintiff's potential lock out tag out ("LOTO") violation and "issues related to the sufficiency and credibility of the investigation." (ECF No. 34 at 4.)

**1. Kramer's Directive to Plaintiff**

Plaintiff contends that the Magistrate Judge failed to consider that Kramer's directive to Plaintiff – "to get the job done without electricians (who had keys)" – was the proximate cause of Plaintiff's termination and was motivated by racial bias (*Id.* at 2-3.) According to Plaintiff, the record supports that his direct supervisor, Kramer, was motivated by discriminatory and retaliatory animus against Plaintiff and that Kramer set Plaintiff up "with a Hobson's choice, which would lead to termination no matter which option Plaintiff chose." (*Id.* at 3.)

A review of the Report reveals, however, that the Magistrate Judge thoroughly examined Plaintiff's arguments in support of his cat's paw theory of liability. See *Smyth-Riding v. Scis. & Eng'g Servs., LLC*, 699 F. App'x 146, 155 (4th Cir. 2017) (stating that under a "cat's paw" theory of liability, there are "circumstances under which an employer may be held liable . . . based on the [unlawful] animus of an employee who influenced, but did not make, the ultimate employment decision). Ultimately, the Magistrate Judge found that, even assuming Kramer harbored animus against Plaintiff, Defendant's independent investigation into Plaintiff's potential LOTO violation led by Safety/HR Manager Ronnie Constable "broke any causal link between Kramer's alleged animus and [Justin] Nelson's decision to terminate Plaintiff's employment." (ECF No. 33 at 23.) While Plaintiff disagrees with this finding, after *de novo* review, the Court finds that the Magistrate adequately addressed and rejected Plaintiff's cat's paw theory of liability. See *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004) (en banc) (holding that to succeed under this theory, a plaintiff must show "sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one

3

principally responsible for the decision or the actual decisionmaker for the employer") (*overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Significantly, as highlighted in the Report, there is no evidence in the record that Kramer was involved in the decision to terminate Plaintiff's employment. (*Id.*) Indeed, not only did Kramer *not* recommend that Plaintiff be fired, but Kramer did not even participate in the conference call where Constable reported his independent conclusions to Justin Nelson, who was the ultimate decision maker (with approval from the chain-of-command above him). *See also Ashanti v. City of Richmond Sch. Bd.*, No. 3:21CV494, 2023 WL 1110300, at *9 (E.D. Va. Jan. 30, 2023) (unpublished) (stating that to proceed under the cat's paw theory, a plaintiff must plausibly allege (1) his supervisor harbored an unlawful animus, (2) his supervisor performed an act intended to cause an adverse employment action, and (3) **the decision-maker merely rubber-stamped his supervisor's recommendation**) (emphasis added). Thus, the Court finds Plaintiff's first objection without merit.

   **2. Kramer's Influence on, and the Sufficiency of, the Investigation.**

In an effort to ostensibly avoid the consequence of the Magistrate Judge's finding above – that the independent investigation of Constable severed any causal link between Kramer's alleged animus and Plaintiff's termination – Plaintiff lodges various criticisms of Constable's investigation and attacks Constable's credibility. (ECF No. 34 at 4-6.) After *de novo* review, the Court is unpersuaded by Plaintiff's attempt to create a fact issue "regarding whether Constable's investigation was truly independent, credible, and proper." (ECF No. 34 at 6.) For reasons already noted above, in addition to other critical, undisputed facts highlighted by the Magistrate Judge – e.g., Constable (1) worked in a

separate HR Chain of command and reported directly to corporate headquarters in Raleigh North Carolina; (2) reviewed a written incident report from Kramer; (3) interviewed Plaintiff twice;[1] (4) interviewed Kramer and three other employees, including Plaintiff's only alleged comparator; (5) reviewed Defendant's LOTO policy and procedures; and (6) visited the site where Plaintiff's alleged LOTO violation occurred and took pictures – the Court finds this objection without merit. The Court's independent review of the record similarly reveals a lack of evidence from which a "reasonable juror could find that Kramer conducted or controlled the factfinding portion of the [Constable's] investigation." (ECF No. 33 at 18.) Further, the Court notes that the Magistrate Judge considered and properly rejected Plaintiff's arguments challenging the credibility of Constable's declaration. (*See id.* at 17 n.4.) In sum, the Court finds that Plaintiff has failed to show that the Magistrate Judge's rejection of Plaintiff's cat's paw theory of liability was in error.

## Conclusion

For the foregoing reasons, the Court **adopts and specifically incorporates** the Magistrate Judge's Report (ECF No. 33); **overrules** Plaintiff's objections (ECF No. 34); and **grants** Defendant's motion for summary judgment. (ECF No. 28.) Accordingly, this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

February 24, 2025
Charleston, South Carolina

---

[1] While Plaintiff clearly takes issue with the fact that his interviews did not take place in person, (ECF No. 34 at 4), he fails to explain why the method in which his interviews were conducted was insufficient or how an in-person interview would have changed the information he provided to Constable.